UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JUSTIN C.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

**DECISION AND ORDER**

1:24-CV-00897 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Justin C. ("Plaintiff") brings this action pursuant to Title II and Title XVI of the Social Security Act ("Act"), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). (*See id.*).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 7; Dkt. 9). For the reasons discussed below, the Commissioner's motion for judgment on the pleadings (Dkt. 9) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 7) is denied.

## BACKGROUND

On June 27, 2019, Plaintiff filed applications for DIB and SSI. (*See* Dkt. 3 at 204-16).[1] Plaintiff alleged that he was disabled because of chronic myelogenous leukemia, with a disability onset date of July 1, 2018. (*See id.* at 234, 238). The Social Security Administration ("SSA") initially denied Plaintiff's applications, as well as upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*See id.* at 70-135, 138-39). Following a hearing on January 27, 2021, ALJ Stephan Bell issued an unfavorable decision on February 3, 2021. (*See id.* at 13-46, 52-69). Plaintiff requested Appeals Council review, which was denied on November 9, 2021. (*See id.* at 7-12).

Plaintiff then filed a district court action, and on May 5, 2023, this Court remanded Plaintiff's case to the Commissioner for further administrative proceedings pursuant to a joint stipulation by the parties. (*See id.* at 911-12). On April 22, 2024, Plaintiff had another hearing before ALJ Bell, who issued an unfavorable decision on May 28, 2024. (*See id.* at 783-823). Plaintiff then filed the present action on September 25, 2024. (Dkt. 1).

## LEGAL STANDARDS

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

---

[1]    Page numbers in docket citations refer to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

2012) (citation modified). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by "substantial evidence." *See* 42 U.S.C. § 405(g). "'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera*, 697 F.3d at 151 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (citation modified). However, "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citation modified).

## II.     Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." *Id.* But if the claimant does have at least one severe impairment, the ALJ continues to step three. *Id.*

At step three, the ALJ examines whether a claimant's severe impairment meets or medically equals the criteria of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the severe impairment meets or medically equals the criteria of a listed impairment and has lasted, or is expected to last, for a continuous period of at least 12 months, then the claimant is disabled. *Id.* If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). "'A regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* But if he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant, in light of his or her age, education, and work experience, "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (citation modified); *see* 20 C.F.R. §§ 404.1560(c), 416.960(c).

**DISCUSSION**

I.     **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a). (*See* Dkt. 3 at 786-97). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 18, 2019. (*See id.* at 789-90). At step two, the ALJ found that Plaintiff suffered from one severe impairment: chronic myelogenous leukemia. (*See id.* at 790).

At step three, the ALJ found that Plaintiff's leukemia did not meet or medically equal one of the listings. (*See id.*). In particular, the ALJ considered Listing 13.06. (*See id.*). Then, before proceeding to step four, the ALJ concluded that Plaintiff had the RFC to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that Plaintiff:

> Can lift, carry, push, and pull . . . up to ten pounds frequently and up to 20 pounds occasionally, sit for six hours, stand for six hours, and walk for six hours. [He] can occasionally climb ramps and stairs, occasionally climb ladders, ropes, or scaffolds, and occasionally balance, stoop, kneel, crouch, and/or crawl.

(*See id.* at 790-91 (citation modified)).

At step four, the ALJ found that Plaintiff, given his age, education, work experience, and RFC, could perform past relevant work as a loan clerk. (*See id.* at 796-97). Accordingly, the ALJ determined that Plaintiff had not been disabled as defined by the Act between July 1, 2018, and May 28, 2024. (*See id.* at 797).

## II.  The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner for further administrative proceedings, arguing that the ALJ improperly evaluated the opinions of treating oncologists Herbert L. Duvivier, M.D., and James Z. Wang, M.D. (*See* Dkt. 7-1 at 10-18). The Court has considered that argument and, for the reasons discussed below, finds it without merit.

For claims filed on or after March 27, 2017, such as Plaintiff's, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Further, "when a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section." *Id.* §§ 404.1520c(b)(1), 416.920c(b)(1). Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *See id.* §§ 404.1520c(c), 416.920c(c).

The ALJ must articulate his or her consideration of the medical opinion evidence, including how persuasive he or she finds the medical opinions in the case record. *See id.*

§§ 404.1520c(b), 416.920c(b).  More specifically, the ALJ must explain how he or she considered the "supportability" and "consistency" factors and may—but is not required to—explain how he or she considered the remaining factors.  *See id.* §§ 404.1520c(b)(2), 416.920c(b)(2).  With respect to "supportability," the regulations provide that "the more relevant the objective medical evidence and supporting evidence presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1) (citation modified).  And with respect to "consistency," the regulations provide that "the more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

On April 14, 2020, Dr. Duvivier completed a "Leukemia Medical Assessment Form," opining that Plaintiff: (1) was experiencing disturbed sleep, persistent or relapsing fatigue, weakness, bone and joint pain, paresthesia, nausea, vomiting, lightheadedness, and dizziness; (2) would frequently experience symptoms that would interfere with the attention and concentration needed to perform simple work tasks; (3) would be unable to handle public contact, routine or repetitive tasks at a consistent pace, strict deadlines, close interaction with coworkers or supervisors, fast paced tasks, or exposure to work hazards; (4) would experience fatigue, nausea, diarrhea, drowsiness, lightheadedness, and dizziness because of his medications; (5) could walk at most one block before needing rest or

experiencing severe pain; (6) could continuously sit or stand for 30 minutes at a time; (7) could continuously stand for 20 or 30 minutes at one time but would need to sit or lie down afterwards; (8) could sit, stand, and walk for less than two hours total during an eight-hour workday; (9) would need to take more than 10 unscheduled breaks during an eight-hour workday, with each break lasting 20 or 30 minutes; (10) could occasionally lift up to 20 pounds; (11) would be absent from work more than four days per month; and (12) would need between one and three unscheduled bathroom breaks every one or two hours, with each break lasting up to 30 minutes.  (*See* Dkt. 3 at 711-13).

On April 15, 2024, Dr. Wang completed a "Physical Treating Medical Source Statement," opining that Plaintiff: (1) was experiencing back pain, diarrhea, nausea, abdominal and back pain, body aches, fatigue, and weakness; (2) would frequently experience symptoms that would interfere with the attentional and concentration needed to perform simple work tasks; (3) could tolerate moderate work stress; (4) could walk at most one block before needing rest or experiencing severe pain; (5) could continuously sit for 45 minutes or one hour at a time; (6) could continuously stand for 20 or 30 minutes at one time; (7) could sit, stand, and walk for less than 2 hours total during an eight-hour workday; (8) would need a job that allowed him to shift positions at will; (9) would need to take between one and three unscheduled breaks during an eight-hour workday, with each break lasting one or two hours; (10) could occasionally lift 10 pounds and rarely lift 20 pounds; (11) could occasionally twist, stoop, crouch, squat, and climb; and (12) would be absent from work more than four days per month.  (*See id.* at 1077-81).

The ALJ addressed Dr. Duvivier's and Dr. Wang's opinions together.  (*See id.* at 795-96).  Specifically, the ALJ stated:

> In an April 14, 2020 statement, Dr. Duvivier reported [Plaintiff] treated his leukemia with daily oral chemotherapy medication.  Dr. Duvivier asserted [Plaintiff's] impairment limited him to less than sedentary exertion, absenteeism of greater than four days per month, and the need for unscheduled breaks of up to 30 minutes (Exhibit 12F, pp. 3-4).  In an April 15, 2024 statement, treating oncologist James Z. Wang, M.D., reported that [Plaintiff] treated with his practice group approximately every three months since June 2018 for chronic myeloid leukemia.  Dr. Wage [sic] specified the known side effects of [Plaintiff's] prescribed oral chemotherapy included diarrhea, abdominal pain, dizziness and headache.  []
>
> Both doctors provided conflicting function-by-function limitations and that [Plaintiff] could sit for 45-60 minutes at one time and stand for 20 to 30 minutes at one time, but could sit, stand, and/or walk for [a] total of less than two hours in an eight-hour workday. . . .  Although Drs. Duvivier and Wang are two of [Plaintiff's] current treating oncologists, nevertheless I find these opinions limitedly persuasive because of the internal inconsistencies within the reports and because other evidence of record, which include these physicians' office notes, reflected generally mild symptoms and questionable compliance with recommended treatment up until December 2022.  [Plaintiff's] side effects returned to mild levels with treatment starting in February 2023.  Even with these side effects, [Plaintiff's] [Eastern Cooperative Oncology Group ("ECOG") and Karnofsky Performance Statuses][2] remained 1/80 or greater.  In short, this evidence indicates greater [Plaintiff] capacity than these doctors opine.

---

[2] In the decision, the ALJ explained that the ECOG Performance Scale grades the functional status for cancer patients.  A grade of 0 indicates that the patient is "fully active, able to carry on all pre-disease performance without restriction."  (Dkt. 3 at 791 n.1).  *See also* https://ecog-acrin.org/resources/ecog-performance-status/ (last visited Feb. 9, 2026) (score of 0 indicates "[f]ully active, able to carry on all pre-disease performance without restriction" and score of 1 indicates "[r]estricted in physically strenuous activity but ambulatory and able to carry out work of a light or sedentary nature, e.g., light house work, office work.").  The Karnofsky index ranges from 100 and 0, with an index of 100 reflecting "normal, no complaints and no evidence of disease," 90 indicating the ability to "carry on normal activity; minor signs or symptoms of disease," and an 80 reflecting "normal activity with effort, some signs or symptoms of disease."  (*Id.* at 791 n.2).  *See also*  https://www.physio-pedia.com/Karnofsky_Performance_Status_Scale (last visited

(*Id.* (citation modified)).

Plaintiff argues that the ALJ failed to adequately address the supportability and consistency factors in his evaluation of Dr. Duvivier's and Dr. Wang's opinions. (*See* Dkt. 7-1 at 12-18). More specifically, he says that the ALJ ignored portions of Dr. Duvivier's and Dr. Wang's treatment notes that supported their opinions, as well as the fact that the opinions were largely consistent with each other. (*See id.*). The ALJ, however, did not need to address all of the ways in which Dr. Duvivier's and Dr. Wang's opinions were consistent. *See, e.g.*, *Linda A. v. Comm'r of Soc. Sec.*, No. 6:24-CV-6258 (JLS), 2025 WL 3482747, at *4 (W.D.N.Y. Dec. 4, 2025) ("But an ALJ is not required to compare individual medical opinions with each other; instead, an ALJ needs only to address the consistency of an opinion with the remainder of the record."). Nor did he need to address every instance of fatigue, nausea, and diarrhea found in Dr. Duvivier's and Dr. Wang's treatment notes. *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("We are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony. . . .").

In the Court's view, the ALJ followed the regulations when evaluating Dr. Duvivier's and Dr. Wang's opinions. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ provided valid reasons to conclude that the opinions were of limited persuasion,

---

Feb. 9, 2026) (score of 100% reflects that "patient has no complaints and is without evidence of disease," score of 90 indicates that "patient has minor signs/symptoms, but is able to carry out his or her normal activities," and score of 80 reflects that "patient demonstrates some signs/symptoms and requires some effort to carry out normal activities").

explaining that the opinions were unsupported by the physicians' own treatment records and inconsistent with other evidence in the record, including records reflecting that Plaintiff had questionable compliance with medical advice and records showing Plaintiff's ECOG and Karnofsky Performance Statuses remained at 1/80 or better throughout the relevant period. These conclusions are supported by substantial evidence.

For example, the ALJ discussed treatment notes from these providers which generally reflected Plaintiff's mild symptoms and his favorable ECOG and Karnofsky Performance Statuses. In the decision, which must be read as a whole, the ALJ described Dr. Duvivier's treatment records as follows:

> In June 2018, his treating oncologist, Herbert Duvivier, M.D., classified [Plaintiff] as a 1 on the Eastern Cooperative Oncology Group (ECOG) Performance Scale and as a 90 on the Karnofsky Performance Scale. (Exhibit 1F, pp. 2-4). The July 23, 2018 bone marrow biopsy showed chronic myelogenous leukemia chronic phase, for which Dr. Duvivier prescribed daily anti-neoplastic prescription medication. [Plaintiff's] performance scales remained the same. (Exhibit 1F, pp. 11-14). [Plaintiff] maintained this medication regimen through October 2018. Examination notes disclosed normal physical examination results, the same performance scales classifications, no weight loss, fevers, chills, or sweats, and good hematological response to the treatment (Exhibit 1F, pp. 21-23). In January 2019 and April, [Plaintiff] reported mild fatigue. His ECOG Performance Scale improved to 0 and his Karnofsky Performance Scale improved to 100. The doctor continued this treatment. (Exhibit 1F, pp. 25-32).

(Dkt. 3 at 791). Similarly, a February 29, 2024 treatment record from Dr. Wang reflects an ECOG Performance Scale of 0 and Karnofsky Performance Scale of 100. (*Id.* at 1085). The ALJ noted that Plaintiff's ECOG and Karnofsky scale classifications never dipped below 1/80 throughout the relevant time period and generally trended towards 0/100. (*Id.* at 793). The ALJ's citation to and consideration of these scores and other entries in the

providers' treatment records provide ample support for the Court to glean the basis for the ALJ's conclusion that the medical opinions advising greater limitations were not supported.

Likewise, the ALJ properly considered Plaintiff's compliance with and response to treatment in assessing the opinion evidence. *Vincent A. v. Comm'r of Soc. Sec.*, No. 20-CV-01802-MJR, 2022 WL 17139512, at *6 (W.D.N.Y. Nov. 22, 2022) ("The ALJ noted that Plaintiff engaged in minimal treatment. . . . In determining disability, an ALJ may properly consider whether a claimant complied with treatment recommendations."); *James D. v. Comm'r of Soc. Sec.*, 547 F. Supp. 3d 279, 290 (W.D.N.Y. 2021) ("It was proper for the ALJ to consider both Plaintiff's noncompliance with medication and his conservative treatment in assessing the credibility of his subjective complaints."); *Kenneth W. v. Comm'r of Soc. Sec.*, No 1:19-CV-0825, 2020 WL 7385251, at *7 (W.D.N.Y. Dec. 16, 2020) (ALJ properly considered plaintiff's noncompliance with treatment as relevant to the evaluation of his subjective allegations). The ALJ cited to specific treatment records which documented Plaintiff's providers' reinforcement of advice for Plaintiff to comply with prescribed medication, maintain appointments, and follow medical guidance. (*See, e.g.,* Dkt. 3 at 515, 518, 1071).

What is more, the ALJ's findings and RFC were supported by other evidence in the record. Consultative examiner Nikita Dave, M.D., opined on September 18, 2019, that Plaintiff had only a minimal to mild limitation in lifting and carrying, and moderate limitations for severe sustained physical exertion. (Dkt. 3 at 592). Two State agency physicians concluded that Plaintiff could lift, carry, push, and/or pull 20 pounds

occasionally and 10 pounds frequently, stand and/or walk for six hours in an eight hour workday, and sit for six hours in an eight hour workday.[3]

In addition, Plaintiff's activities of daily living reflected limitations less restrictive than those contained in the opinions of Dr. Duvivier and Dr. Wang. *Casara O. v. Comm'r of Soc. Sec.*, No. 6:23-CV-06446 EAW, 2024 WL 3963538, at *8 (W.D.N.Y. Aug. 28, 2024) ("The ALJ's comparing of Plaintiff's activities of daily living to restrictions set forth in medical opinions is appropriate."). The ALJ noted that Plaintiff was employed for part of the time he alleged he was disabled and that while he was terminated for "failure to meet attendance and punctuality requirements of [the] position," the record reflected that Plaintiff's "unpaid leave requests were for reasons other than his impairment, such as out of town travel, lack of transportation, treatment for other disorders, unidentified business needs, and unidentified legal obligations." (*Id.* at 789). This too was a proper consideration. *See Nicolas D. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00052 EAW, 2024 WL 655599, at *5 (W.D.N.Y. Feb. 16, 2024) ("As support for his conclusions regarding his assessment of Dr. Williams' opinions, the ALJ appropriately considered Plaintiff's ability to obtain a bachelor's degree and engage in part-time work throughout the relevant time period."); *Silva v. Saul*, No. 18-CV-6206 CJS, 2019 WL 2569595, at *5 (W.D.N.Y. June 21, 2019) ("An ALJ may also properly consider a claimant's demonstrated ability to

---

[3] The ALJ explained that in the interest of administrative economy, he did not repeat his assessment of medical opinions from his prior decision that were not disturbed by the Appeals Council's remand. (Dkt. 3 at 794).

work part-time during the relevant period as evidence that the claimant is not completely disabled.").

Ultimately, Plaintiff's argument that the ALJ failed to adequately address the supportability and consistency factors in his evaluation of Dr. Duvivier's and Dr. Wang's opinions boils down to a disagreement with the ALJ's weighing of the evidence, and it is "not the function of this Court to re-weigh evidence or consider *de novo* whether [Plaintiff] is disabled." *Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021); *see Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review."); *Lisa T. v. Kijakazi*, No. 3:20-CV-1764 (SVN), 2022 WL 2207613, at *3 (D. Conn. June 21, 2022) ("an allegation of cherry-picking is seldom successful because crediting it would require a court to re-weigh record evidence," and "what a claimant may label as cherry-picking can often be described more neutrally as weighing the evidence").  Accordingly, Plaintiff is not entitled to remand based on the ALJ's evaluation of Dr. Duvivier's and Dr. Wang's opinions.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings (Dkt. 9) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 7) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   February 10, 2026
         Rochester, New York